UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF KENTUCKY

DARRELL PARKS, pro se
VICTORVILLE - UNITED STATES PENITENTIARY
POST OFFICE BOX 5300
ADELANTO, CALIFORNIA 92301
Petitioner,

Versus

Eastern District of Kentucky
FILED

DEC 27 2010

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

Civil Action No.:
6:10-cv-355-GFVT

HOLLY ANDERSON, CASE MANAGER et al.,

T. JONES, SENIOR CORRECTIONAL OFFICER

K. STRUAB, CORRECTIONAL COUNSELOR/ACTING LIEUTENANT

JOHN DOE, UNKNOWN LIEUTENANT

MR. MOULTON, UNIT MANAGER

FERNANDO J. MESSER, EXECUTIVE ASSISTANT

MR. W. WOOD, CORRECTIONAL COUNSELOR

MS. WOODS, CASE MANAGER

MS. K. BRYANT, SENIOR CORRECTIONAL OFFICER

MR. WEST, PRACTITIONER'S ASSISTANT

D. GARDNER, SENIOR CORRECTIONAL OFFICER

DR. WILLIARD, PSYCHOLOGIST DOCTOR

MR. HARDIN, A.M. ACTIVITIES LIEUTENANT

MR. RAITT, DISCIPLINARY HEARING OFFICER

UNITED STATES PENITENTIARY - MCCREARY

330 FEDERAL WAY

PINE KNOT, KENTUCKY 42635

## BIVENS ACTION

Preliminary Statement

Comes now Petitioner Darrell Parks, #09540-007 pro se, see Haines vs. Kerner, 404 US 519 (1972), meekly and respectfully request that this most honorable United States District Court For The Eastern District Of Kentucky, to intervene using its judicial authority and query the issues herein presented of Constitutional Violations of FREEDOM of SPEECH and/or PETITION the GOVERNMENT for REDRESS and DUE PROCESS and/or CRUEL & UNUSUAL PUNISHMENT in accords with his First (1st), Fifth (5th), Eighth (8th) and Fourteenth (14th) Amendment Rights gaurranteed by the United States Constitution, all done in RETALIATION and/or CONSPIRACY to RETALIATE and/or CAMPAIGN for HARASSMENT against petitioner. In addition, he seeks DECLARATORY Relief; a JURY TRIAL demand as well as COMPENSATORY, PUNITIVE along with MENTAL & EMOTIONAL Damages, coupled with any other relief that this most honorable Court deems just and equitable.

This is a civil rights action filed by petitioner, a federal prisoner for declaratory relief, jury trial and damages under BIVENS Action, alleging retaliation and/or conspiracy to retaliate and/or campaign for harassment against petitioner for wanting to seek and seeking the use of his First Amendment Rights to Freedom of Speech and/or Petition the Government for Redress by defendants attempts to impede/hinder/thwart/discourage petitioner from filing grievances, Court complaints and other such administrative and Court documents; making-up false statements and false disciplinary charges/reports as well as confinement in a Step-Down-Unit, coupled with, SPECIAL HOUSING UNITS ("SHU") and transferred all the while abusing and/or misusing their

2

authority all done with the malicious and/or sardistic and wanton intentions to violate petitioner's fifth accompanied with eighth Amendment rights to due process and cruel & punishment, as petitioner's transfer was the final level of retaliation amounting to cruel & punishment because he was place under worst housing conditions.

## Jurisdiction

1. The jurisdiction over petitioner's petition is found under 28 U.S.C. §1331 & §1343 (c)(3).

## Venue

2. Venue is sought under 28 U.S.C. §1391, and is proper in that this claim arose while petitioner was in the CARE, CUSTODY and CONTROL of the United States Federal Bureau of Prisons, in Pine Knot, Kentucky.

## Declaratory Relief

3. In addition, petitioner seeks declaratory relief pursuant to 28 U.S.C. §2201 and §2202.

## Others

4. Plaintiff respectfully request in accordance with his SEVENTH (7th) Amendment Right to the United States Constitution, in conjunction with Rule 38, of Federal Rules of Civil Procedures, for a JURY TRIAL.

5. Petitioner also respectfully request for "APPOINTMENT of COUNSEL" (an Attorney) to ascertain relevant documents, conduct depositions - investigate, seperate the serious allegations from those that are irrelevant commentary, legal frame and represent the issues herein presented of CONSTI~TUTIONAL VIOLATIONS because he is not an attorney, nor can he afford to hire one (1) as he submits this COMPLAINT pro se.

## Exhaustion of Administrative Remedy

6. Petitioner avers that the United States Federal Bureau of Prisons ("BOP") has an ADMIN~ISTRATIVE REMEDY (see 28 C.F.R. §541.19 and/or §40 "Standard For Inmate Grievance Procedure" and/or BOP-Program Statement 1530.16 "Administrative Remedy Program") PROCESS incorporated by the BOP, in which he utilized it, however, it was to no avail.

Parties

7. The petitioner, Darrell Parks, was incarcerated at the United States Penitentiary - McCreary (USP-McCreary) during the events described in this complaint.

8. Defendants Holly Anderson, Ms. Woods, K. Straub, W. Wood and Mr. Moulton are case manager, correctional counselors, and unit manager employed at USP-McCreary. They are sued in their OFFICIAL CAPACITIES.

9. Defendants T. Jones, K. Bryant and Mr. Gardner are correctional officers employed at USP-McCreary. They are sued in their OFFICIAL CAPACITIES.

10. Defendant John Doe, is an unknown staff member employeed at USP-McCreary whom name is presently unknown to petitioner. S/he is being sued in their OFFICIAL CAPACITY.

11. Defendants Dr. Williard and Mr. West, are the psychologist and practitioner's assistant employeed at USP-McCreary. They are sued in their OFFICIAL CAPACITIES.

12. Defendant Hardin, is a lieutenant employeed at USP-McCreary. He is sued in his OFFICIAL CAPACITY.

13. Defendant Pruitt, is a disciplinary hearing officer at USP-McCreary and is responsible for conducting disciplinary hearing for prisoners accused of violating prison rules. He is sued in his OFFICIAL CAPACITY.

14. Defendant Fernando J. Messer, is the executive assistant at USP-McCreary and is responsible for reviewing all administrative remedies filings by USP-McCreary inmates. He is sued in his OFFICIAL CAPACITY.

15. All the defendants have acted, and continue to act, under color of federal law at all times relevant to this complaint.

Facts

16. On or about Friday, May 22, 2009, at approximately 6:47 p.m., petitioner went into

the Unit Team's area of Unit 4-B at USP-McCreary to inquire about his parole to Case Manager-Holly Anderson.

17. Petitioner asked defendant Anderson, to contact the United States Parole Commission to find-out why it was that they did not see him in accords with statue or title 29 District of Columbia Municipal Regulations, §§ 102.1 - 102.2 (1987); and/or District of Columbia Code Annotator §24-201.3 (1989), because he did not waive his parole and they did not come to interview him for his parole suitability nor did he have a parole date on his Sentence Computation Data sheets it just have the word "WAIVED" in the section for parole hearing date.

18. Defendant Holly Anderson, told petitioner "I don't have time for that," dismissing him off.

19. Petitioner responded to defendant Holly Anderson, that with the attitude that she took, he will be submitting a grievance/complaint regarding her and his parole issue then exited the unit team's area.

## RETALIATION

20. Defendant Holly Anderson then sought retaliation against plaintiff by ordering that the Sanitation Closet be locked with his legal property, then writing a memorandum and having it posted in the Correctional Officer's Station of Unit 4-B stating that petitioner was not to be allowed in the Sanitation Closet, to give off the appearance as if petitioner was doing something inappropriate to which he was not.

21. Holly Anderson and the majority of staff know or knew that the Sanitation Closet is where petitioner was doing his studies as well as filings to the Courts and institutional issues staying out of trouble.

22. In addition, Holly Anderson had divulged and discussed confidential/sensitive information regarding (incident report) petitioner with inmate Christopher Thompson; specifically, she asked him whether not they (District of Columbia/Virginia - Prisoners) would permit petitioner to return to the general population due to him being found guilty for an incident report. *

* This incident report petitioner will be requesting to be addressed "in camera."

23. Holly Anderson, further stated that, "if the DHO recommend a transfer that I'm going to put him in to go as far away from his region as possible."

RETALIATION and/or CONSPIRACY to RETALIATION and/or CAMPAIGN for HARASSMENT

24. On Saturday, May 23, 2009, at approx. 8:24am petitioner was on his way out of Unit 4-B to breakfast, he asked defendant T. Jone - Correctional Officer whether not he had called him in for the two (2) hour check to tower seven (7) and he responded, "No! And you are 24 minutes late,... I'm writing you a shot!"

25. Petitioner, baffled & peeved, he continued towards the chow hall but stopped in the Green Corridor to speak with the Correctional Officer (Name Unknown) assigned to this post, pleading to be locked in the Lieutenant's Office Holding cell, explaining to the unknown-correctional officer that petitioner needed a time-out to get his thoughts together because of what had transpired moments ago in Unit 4-B with defendant T. Jones and himself.

26. The unknown-correctional officer informed petitioner (after petitioner had explain what happened and stated that he was going to say something to defendant T. Jones, whom will end-up calling Compound Officers) that he must first bring the dilemma to the Operation's Lieutenant (unknown), and once the Green Corridor's-Correctional Officer returned he communicated that the Operation's Lieutenant stated that its not a sufficient enough reason, denying petitioner's request.

27. Then petitioner articulated to the Green Corridor's-Correctional Officer that, "I tried."

28. Petitioner then went to Unit Manager - Ms. Copeland, and pleaded that she take him back in her housing (either 1-A/1-B or 6-A) unit, all to no avail. She stated to petitioner, "You need to deal with it.")

29. Unit Manager - Ms. Copeland, was correct in her judgment whereas petitioner needed to address and not run from staff employment of a campainge for harassment and/or retaliction and/or conspiracy of retalication for his desire to file grievances/complaints and freedom of speech.

30. Petitioner didn't even eat breakfast because of his lack thereof apetite and as he approached 4-B Unit, once entering the foyer he asked T. Jones, "Do you have something that you want to say to me?"

31. T. Jones, repeated that he was going to write petitioner an incident infraction for reporting la

32. Petitioner replied, "What about yesterday (Friday, May 22, 2009) when you had neglected and abandone your post spending 15 to 20 minutes in the back (between 4-A & 4-B Unit Team Section) fraternizing and I had to bang on the door to have you call me in because of your derelict of post & duty?"

33. Petitioner further stated, "I did not write you up." As it was well known that the ratio of prisoners to staff at USP-McCreary is well below its requirement and the lack thereof alertness and attentiveness to duty is very germane.

34. Nevertheless, T. Jones, became belligerent saying, "I've had nothing but problems out of you and your checking in. I wrote you up several times for not checking in."

35. Petitioner replied, "I don't have any shots for not checking in, and don't be yelling at me."

36. T. Jones stated, "You're the inmate and I'm staff ... you need to know that." Petitioner took the statement as belittlement & blatant disrespect, as defendant continued with "Now get in the Unit!"

37. Petitioner responded, "I'm not your kid, nor am I a dog!"

38. T. Jones said, "You're refusing a direct ORDER!!"

39. Petitioner repeated, "I'm not your kid nor am I a dog!"

40. T. Jones, then told petitioner to put his hands on the wall and petitioner complied. T. Jones, started yelling, "Put your hands up higher!"

41. Petitioner informed T. Jones, that he can only put his left hand/arm up high because his right arm has a messed-up rotative cuff and torn ligament. T. Jones, again yelled "Put your hands up higher or I'll take you down!" This threat was not called for because petitioner has a valid medical injury that's substanciated by his medical records.

42. Petitioner then yelled, "I said that I can't lift but my left arm up higher because

my right shoulder is messed-up.... I have a medical slip... do you want to see it!?" Once the Compound Officers arrived, an Unknown Correctional Officer first ordered that I put my hands flat on on the wall. I complied and explained my quagmire with not being able to lift my right arm higher than my left, then he proceeded to pat-search me. Thereafter, another Unknown-Correctional

Officer conveyed that he could hear petitioner yelling way on the side of 4-B Unit.

43. Petitioner enunciated that he did it to attract witnesses. T. Jones, then said that petitioner "was ensighting a riot" and the second unknown correctional officer pointed to the camera in the sally-port of the entrance to 4-B Unit then, "That's your witness right there."

44. Petitioner then explained that, "When he (T. Jones) threaten to take me down because I could not lift my right arm higher, I then started yelling out my medical inability to attract attention because the camera can't catch verble colloque, so I need people to hear of my compliance." Then petitioner was escorted to the Lieutenant's Office.

45. Upon being seen by an Unknown Lieutenant whom said, "Since you are having problems with Ms. Anderson & T. Jones, you are being placed in 6-B Unit." 6-B Unit at this time was being used as an annex to the Special Housing Units and as punishment.

46. Petitioner replied, "I don't have a problem with Ms. Anderson... what are you talking about?"

47. Unknown Lieutenant asked, "You didn't have a problem with Ms. Anderson?" Petitioner's answer was "No!"

48. On INFORMATION & BELIEF, T. Jones, had communicated to the Unknown Lieutenant that petitioner had a problem with Holly Anderson, thus, he assumed that because of a memorandum that she wrote (and/or spoke with her) and posted in the Correctional Officer's Station in 4-B Unit that petitioner did something inappropriate in the Sanitation Closet as he (T. Jones) sought reprisal and/or conspired to retaliate and/or compaing for harassment.

49. Consequently, petitioner was moved to 6-B Unit cell 101 lower, (a form of punishment for reason of this Unit being used as a step-up from the Special Housing Units and step-down from the

general population as it limits the amount time out in the Unit; does not allow the inmates to participate in recreational (rec. yard) activities; must wear a green jersey; not permitted to go to the law library with the general population inmates; not allowed to go to the gym and its activities; not permitted to have a work detail, etc.) and was release the next day.

50. On or about 06-04-09, after receiving the hour or two (2) of recreation/shower due to USP-McCreary being on institutional lock-down and not being at its full operational capacity, defendant K. Straub, was locking petitioner back in cell 223 of 4-B Unit when petitioner requested of him to file/process some grievances.

## DENIAL of FREEDOM of SPEECH and/or PETITION of GOVERNMENT for REDRESS of GRIEVANCE

51. K. Straub asked petitioner, "Who is this one on?" and petitioner replied that "One is on the Medical Department, one is on Correctional Officer-Mr. T. Jones, and the other one is on Ms. Anderson."

52. Petitioner explained that he also need to file an emergency motion, order to show cause, a preliminary injunction and temporary restraining order against USP-McCreary's Psych. Dept. as well as Medical Dept., and requesting that K. Straub, fill-out the section regarding petitioner's indigency status.

53. After K. Straub, received this information he refused to accept the grievances and in forma pauperis forms saying, "I'm not doing nothing today."

54. Petitioner then said to K. Straub, "I'll need another grievance form tomorrow to write you up." To this statement K. Straub became bellicose yelling, "I don't care... you can't do nothing to me! File all you want!"

55. About 06-05-09, during open house K. Straub was doing a pauperis form for inmate Patrick Robinson, and petitioner was standing next in line therein the Unit Team's hallway awaiting his turn to see K. Straub, to have filed/process plaintiff's grievances and motion.

56. Nonetheless, Holly Anderson, exited her office demanding that petitioner leave from the Unit Team's area (in an attempt to prevent petitioner from filing his grievance) fully aware of petitioner's intentions of filing, and petitioner did not resist but he enunciated that he needed to see K. Straub, and not her then went and waited outside of the Unit Team's door in 4-B Unit.

57. Once K. Straub, finished with inmate P. Robinson, plaintiff attempted to submit his grievance as well as have him (K. Straub) do pauperis forms. K. Straub became disrespectful, unprofessional and vindictive as he sought to discourage petitioner in seeing him to carry-out petitioner's filings.

58. K. Straub told petitioner that, "You're not important! I have other urgent things to do!" As these words were uttered in a very pugnacious manner/demeanor.

59. Petitioner retorted, "I have a right to file and you are trying to impede them. You'll have posted on the bulletin board in 4-B Unit that open house is at this time (about 8:20am) and I need to file some germane filings."

60. Petitioner continued, "All you have to do is process my complaints (grievances) and fill-out four (4) in forma pauperis forms for me."

61. K. Straub, blatantly refused petitioner saying, "I have more important things to do, you aren't important... now get away from the door." To the attempted intimidation and discouragement petitioner stood adamant explaining of his desire to file as K. Straub, grabbed his walkie talkie radioing the Operation's Lieutenant/Lieutenant's Office requesting assistance to have petitioner escorted to the Special Housing Units under false pretense of Insolence Towards Staff and Inciting a Riot.

62. On or about August 24, 2009, defendant Fernando J. Messer, attempted, conspired, obstructed, aid and abetted the making of false statements and falsification of documents done by K. Straub.

63. Fernando J. Messer, purposely impeded, prevented, botched or thwarted petitioner's administrative remedy, remedy #552988-F1 by his statement that petitioner is "only allowed one BP-8½ COMPLAINT form at a time to file."

64. Fernando J. Messer, with misleading, deception, mischievous, melicious & sadistic intention told petitioner that he "had to choose as a matter of importance which complaint to file first, then wait until the disposition of that complaint before another one would be issued."

65. Fernando J. Messer further stated, "Our institutional supplement policy support, and our legal service backs just giving one complaint form at a time." Notwithstanding, that the international or national policy statement is in total conflict therewith.

66. Fernando J. Messer, mislead petitioner with the statement presented in numbers 63, 64 & 65 of this complaint.

67. Fernando J. Messer, participation in the cover-up was so that K. Straub, would be and was promoted to Lieutenant from Correctional Counselor.

68. Fernando J. Messer, has been placed on notice verbally as well as written of the abuse or misuse of authority and unprofessional conduct of Holly Anderson, T. Jones and K. Straub, by a number of complaints coupled with grievances over many months, but had failed to take discipline actions against them or otherwise to control their behavior.

## DENIAL of DUE PROCESS and/or RETALIATION and/or CONSPIRACY to RETALIATE and/or CAMPAIGN for HARASSMENT

69. Petitioner was escorted to the Lieutenant's Office by three (3) Unknown Correctional Officers (assigned to the Compond on 06-05-09) and Lieutenant W. Rivera, called K. Straub, to find-out what reason(s) or institutional charges will be filed against petitioner and on INFOR-MATION & BELIEF he (K. Straub) stated insolence towards staff and inciting a riot.

70. W. Rivera, then ordered that petitioner be placed in 6-B Unit and placed on administrative detention pending an incident report.

71. Shortly thereafter, with malicious and/or wanton sadistic intention, submitted false charges and statements on an incident report for a 299 "Conduct disruptive to security or orderly running of a BOP Facility, most like" and Code Offense 212 "Engaging in or encouraging a group demonstration" all falsely concocted for reason of petitioner's statement and desire to file grievances and complaints against BOP's staff.

72. On 06-06-09, petitioner was served with the incident report as described in numbers

50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70 & 71 by John Doe (Unknown Lieutenant).

73. The petitioner requested that the Investigating Officer - John Doe Lieutenant interview his witnesses (on of which was located or housed in cell 101) whom was housed in the first cell beside the Unit Team's entrance to their Office in 4-B Unit, as well as, his two (2) associates.

74. Petitioner did not & does not know the names of these witnesses, but provided John Doe with where he lived.

75. In addition, petitioner requested that the cameras in the housing (4-B) Unit be preserved to establish facts against the incident report and that John Doe view them.

76. John Doe did not seek-out and interview the witnesses, nor did he view the cameras in conformation; thereto, conducting a poorly non-thorough, non-prompt one sided investigation as he too assisted K. Straub, in his retaliation/conspiracy to retaliate/campaign for harassment by denying me due process.

77. About 06-09-09, petitioner received a Unit Disciplinary Committee (UDC) Hearing by Holly Anderson and defendant Wood, whom requested for names of witnesses & staff representitive; along with, asking for a statement, thereafter stating that the incident report will be forwarded to the Discipline Hearing Officer (DHO).

78. That Holly Anderson, sat as chairperson of the UDC playing an active role in carrying out K. Straub's retaliatory act by processing the incident report as true to the DHO; notwithstanding, that she was a part of the incident and having the active role and being on the scene.

79. On or about 06-14-09, petitioner stopped an unknown lieutenant whom was making his rounds in 6 B-Unit requesting that he be petitioner's staff representative, explaining the incident and allowing the unknown lieutenant to read the incident report; nonetheless, petitioner asked him to view the cameras coupled with speak with witnesses to which his response was that he would.

80. Approximately a week from 06-14-09, the unknown lieutenant returned stating that

petitioner should call him as well as the Special Investigative Service-Lieutenant as witnesses because they viewed the tape and it did not show petitioner being hostile, nor getting a lot of prisoners for your cause. Even more importantly, that they know that petitioner wasn't getting along with his unit team because of filing complaints/grievances against them and that they know of petitioner's conduct & character.

81. Petitioner was later transferred to the SHU for housing on or after about two (2) and a half weeks in L-B Unit (06-24-09).

82. For approximately two (2) to three (3) weeks petitioner ask the DHO-Riatt for his hearing, and the DHO stated that he hasn't receive the necessary paper work, however, if he hasn't received them on the following week that he will have petitioner released from the SHU.

83. Meanwhile, defendant Moulton, threaten, use of intimidation, harassment of coming to the SHU stating that petitioner was "Being put in for the SMU." (Special Management Unit) program.

84. Petitioner asked Moulton, "Am I being recommended to the SMU because I want to file?" and he just kept saying, "You are being recommended for the SMU."

85. After about three (3) weeks of continuously pressuring the DHO to find and process the incident report, and his agreement to release petitioner from the SHU, the vindictively maliciously wanton or sadistically intention to deny petitioner due process and/or harassment/retaliation/conspiracy to retaliate by Holly Anderson's purposeful withholding/failure to processing the incident report, it was released to the DHO.

86. The incident report was expunged on or about 07-16-09, by the DHO-Raitt after about a month and 12 days of being on Administrative Detention status.

87. Upon petitioner's release from the SHU (on the day of the singer's Micheal Jackson's death) his legal/personal mail wasn't given to him as it was misdirected in an attempt to thwart maybe even botch his legal filings.

88. Defendant K. Bryant, on or about 08-18-09, was approached by petitioner requesting to be placed on suicide watch due to his racing thoughts and desire to do harm to himself to which she contacted the operation's lieutenant in the Lieutenant's Office to see what actions to take next.

89. Meanwhile, K. Bryant, was threatening petitioner that if he continue to file complaints on her friends and co-workers especially Holly Anderson, that petitioner was going to end-up in the SNIU.

90. Petitioner asked K. Bryant, "Are you going to help them put me there, because they are having a hard time doing it?"

91. K. Bryant retorted, "I just might. I don't know why they won't make you carry a yellow-card anyway, but we are going to get you."

92. Petitioner then walked of and K. Bryant, called him back telling petitioner to walk out-side the Unit as she radio the Compound Officers (Unknown).

93. Once the Compound Officers arrived at approx. 6:47am they inquired as to what's the nature of the situation and K. Bryant stated, "The lieutenant said bring him to their office because he's feeling suicidal."

94. As petitioner was being escorted to the Lieutenant's Office, the Compound Officers further inquired about petitioner's mental state and petitioner stated, "I haven't heard from my family in about a year, I haven't seen the parole board yet, staff keep harassing me and I'm mentally drained."

95. Inside the Lieutenant's Office Operations Lieutenant - Alexander asked petitioner whether he felt suicidal and he said, "Yes." Then Alexander told the Compound Officers to remove petitioner's belt, shoe strings and strip search him.

96. Defendant Activities Lieutenant - Hardin said, "Hold-up, Parks normally when you do this you want something...what do you want?" Petitioner responded, "I want to kill myself!" and Hardin told the Compound Officers to carry-out Alexander's orders and then contact psychology service.

97. Shorty thereafter, acting Lieutenant K. Straub, brought petitioner a false incident report written by K. Bryant and petitioner was taken to the SHU pending the disposition of the incident report.

98. K. Bryant, with malicious and/or wanton sadistic intention, submitted false charges and statements on an incident report for (this issue is respectfully requested to be discussed in ca'mera) all falsely concocted for retaliation/conspiracy to retaliate and/or campaign of harassment

-14-

99. K. Straub made the statement," I see why you want to commit suicide.... you were caught (in camera issue)."

100. Petitioner averred," I didn't do anything.... you'll are just retaliating against me. This one won't stick either because she's lying and you know it."

101. The petitioner requested that K. Straub, interview the two (2) lieutenants and three compound workers to get their statement that I came to the Lieutenant's Office to be placed on suicide watch. In addition, I asked to have Mr. Thompson (my celly) to be interviewed and to be seen by a medical doctor or Practitioner's Assistant.

102. Petitioner did not know any names of the correctional officers, but provided K. Straub with their title or assigned post.

103. K. Straub, did not seek-out and interview any of the witnesses, nor had me seen by medical practioner's assistant or doctor; thereto, conducting a poorly non-thorough, non-prompt one sided investigation to further their retaliation/conspiracy to retaliate/campaign for harassment by denying petitioner due process.

104. About 08/19/09, petitioner received a UDC hearing by W.Wood & Holly Anderson, whom requested for names of witness(es), staff representative & statement;thereafter stating that the incident report will be forward to the DHO.

105. On or about 8-19-09, petitioner stopped defendant P.A.-West, as he was making SHU rounds to explain his very sensitive personal medical problem to which P.A.-West examine noted, took samples and later made prognosis then diagnosed petitioner's ailment.

106. Petitioner had explained to P.A.-West his delimma with being accused of an act to which he can not preform. P.A.-West, incorrectly placed in petitioner's files (MEDICAL) how he stated when, where & how he acquired the medical problem as well as on INFORMATION & BELIEF as told by the DHO-Reitt that petitioner did not have any medical problem.

107. P.A.-West's, statement to DHO-Reitt contradict the findings he placed in petitioner's medical files, thus, he too mislead, deceived with mischievious-maliciously wanton or sadistic intentions of retaliate/conspiracy to retaliate/campaign for harassment and denial of due process.

108. On 08-18-09, defendant Dr. Willard, came to see petitioner because of correctional service requested that Psychology Service evaluate petitioner's mental state for reasons of his conveyance of wanting to harm himself.

109. Nevertheless, petitioner asked Dr. Willard if she would mind being his staff representative for the alleged pending incident report and she agreed.

110. On or about 08-20-09, Dr. Willard received some Inmate Request to Staff forms from petitioner to distribute to both lieutenants as well as the three (3) unknown compound workers as part of her staff representative duties. Petitioner requested that she acquire the following answers to the following questions from the two (2) lieutenants and three (3) compound workers:

    (a) Were you called to 4-B Unit on 08-18-09, if yes, state your name?

    (b) What was the reason(s) that K. Bryant, told you why your service was needed?

    (c) Did you or your co-worker inquire as to why it was that you were summon?

    (d) What was her response to question (b) & (c)?

    (e) Did you escort petitioner to the Lieutenant's Office, if so, why?

    (f) Was petitioner questioned by you or your co-worker regarding his state of mind, if so, why?

    (g) Were you called in reference to petitioner's negative conduct at about 4:00am on 08-18-09?

    (h) What, if anything, were you called at 4:00am on 08-18-09 for?

    (i) Were you called in reference to petitioner's mental state at approx. 6:45am on 08-18-09?

    (j) What actions were taken, and for what reason(s), against petitioner in the Lieutenant's Office?

111. After more than one (1) month Dr. Willard, hadn't obtained any of the responses to petitioner's questionaires stating, "I mailed them." eventhough she agreed to hand deliver them, as well as, pick them up once answered and bring them back to petitioner to discuss their contents.

112. Dr. Willard, had not accomplished the simple fact of ascertaining witnesses responses, however, she did say "They can't remember what happen that day." That is,... after more than a month had elapse.

113. About 10-15-09, Dr. Willard returned to the SHU to tell petitioner, "Lieutenant Hardin, e-mailed a statement." and petitioner requested to know what it is that he said, however, she said, "I'll tell you during the DHO Hearing." Then walked off.

114. The DHO Hearing was prolong for such an extended period of time due to Dr. Willard's intentionally malicious or wanton sadistic botching of petitioner disciplinary procedures because of his filing of complaints against Psychology Service and/or retaliation/conspiracy to retaliate/campaign for harassment.

115. That on or about 10-22-09, Dr. Killiard stated that Lieutenant Hardin's e-mail statement was that petitioner "only wanted to commit suicide because he was caught [in camera issue] on staff." This was Psychology Service attempt at establishing that petitioner only felt suicidal for secondary gains and not deal with petitioner's mental health concerns, after he filed on their inadequate and unprofessional practices.

116. Defendant D. Gardner, lied and submitted false statements with maliciously wanton and/or sadistic intentions to mislead, deceive and deny petitioner due process and/or retaliate/conspiracy to retaliate/campaign for harassment because D. Gardner was not one (1) of the compound officers whom was summon or came to 4-B Unit on 08-18-09, as he's seeking or sought reprisal for reason of petitioner reported and filed use of unnecessary excessive force on 08-09-09 or thereabout.

117. Petitioner had process a claim against D. Gardner, for his unprofessional conduct in unnecessary/unwarranted use of force on or about 08-09-09, and he submitted false, misleading and detrimental statements to secure petitioner being found guilty, sanction and transferred, in this matter.

118. D. Gardner, with malicious and sadistic or wanton intentions to mislead, deceive and/or intimidate petitioner in to discontinuing or maybe thwart then botch the processing of his complaint regarding D. Gardner's unprofessional conduct.

119. On or about 08-09-09, petitioner received a UDC hearing by W. Wood & Holly Anderson, whom refused to afford petitioner any privacy when they held his hearing on the range for all prisoners to hear; denied an opportunity to make a statement; did not log all of petitioner's witnesses.

120. That W. Wood sat as chairperson & Holly Anderson sat as a boardmember, playing an active role in carrying out the retaliation/conspiracy to retaliate/campaign for harassment by thwarting and attempting to botch petitioner's hearing as they denied him due process.

121. Furthermore, W. Wood & Holly Anderson, with vindictively malicious-wanton or sadistic intentions to deny petitioner due process and retaliate and/or conspiracy to retaliate and/or campaign for harassment by their purposefulness in not affording petitioner privacy, making a statement and logging of witnesses in compliance with policy statement as well as the privacy act.

122. Petitioner presented as his defense to Defendant M.Riatt, that he is already aware of the fact that his unit team is out to retaliate against him because of his desire to seek redress, and that K. Bryant has been employed by them as a favor, then communicated the conversation that they had on 08-18-09, as stated in numbers 88, 89, 90, 91, 92 & 93 of this complaint, being the bases of the incident, during the hearing (DHO) on or about 10-22-09.

123. Also, petitioner raised a medical [to be discussed in ca'mera] problem that made carrying out the action alleged [also to be presented in ca'mera] in the incident report, one very painful and highly unlikely task, as petitioner continuously averred that he is innocent... to M.Riatt.

124. Moreover, petitioner raised those issues of the investigating lieutenant as stated in numbers 99, 100, 101, 102 & 103 of this complaint.

125. In addition, petitioner raise that K. Bryant did not notify the operation's lieutenant nor informed the command officers of the alleged incident as well as those issues presented in numbers 108, 109, 110, 111, 112, 113, 114 & 115, of this complaint.

126. Finally, petitioner raised those issues in numbers 105, 106 & 107 regarding his witness P.A.-West, and his medical situation, coupled with, those issues articulated in numbers 116, 117 & 118, of this complaint

126. Petitioner was found guilty by M.Raitt on or about 10-22-09, he received a written disposition signed by M.Riatt, stating [in ca'mera] and sentenced to punitive segregation of 30 days, loss of commissary 180, loss of phone 180 and disciplinary transfer.

## RELIEF REQUESTED:

WHEREFORE, petitioner requests that the Court grant the following relief:

A. Issue a DECLARATORY Judgment stating that:

1. The defendant Holly Anderson, in violation of the 1st Amendment Right to the United States Constitution of Freedom of Speech and/or Petition the Government for Redress, sought retaliation against petitioner.

2. The defendant D. Gardner, in violation of the 1ˢᵗ Amendment Right to the United States Constitution of Freedom of Speech and/or Petition the Government for Redress, sought retaliation against petitioner.

3. The defendants Holly Anderson and/or K. Straub, in violation of the 1ˢᵗ Amendment Right to the United States Constitution of Freedom of Speech and/or Petition the Government for Redress, sought retaliation and/or conspired to retaliate and/or campaign for harassment by employing defendants T. Jones, John Doe, Mr. Moulton, Fernando J. Messer, W. Wood, Ms. Woods, K. Bryant, P.A.-West, D. Gardner, Dr. Williard, Mr. Hardin & M. Raitt

4. The defendants violated petitioner's 5ᵗʰ and/or 14ᵗʰ Amendment Rights to Due Process, when and by their sought out retaliation and/or conspiracy to retaliate and/or campaign for harassment for reasons of petitioner's desire to exert his 1ˢᵗ Amendment Right to Freedom of Speech and/or Petition the Government for Redress.

5. The defendants singlely and/or collectively violated petitioner's 8ᵗʰ Amendment Right to the United States Constitution to not be subjected to Cruel & Unusual Punishment and/or 5ᵗʰ and/or 14ᵗʰ Amendment Rights to Due Process, by having petitioner confined in 6-B Unit (a SHU step-up unit) and the SHU on Administrative Detention/Disciplinary Segregation and/or transferred under false and/or retaliation and/or conspiracy to retaliation and/or campaign for harassment circumstances.

6. That the actions or omissions of defendants in retaliating and/or conspiracy to retaliate and/or campaign for harassment of petitioner violates the 1ˢᵗ, 5ᵗʰ, 8ᵗʰ & 14ᵗʰ Amendment Rights to the United States Constitution to Freedom of Speech and/or Petition the Government for Redress, Due Process and Cruel & Unusual Punishment.

B. Award COMPENSATORY Damages in the following amounts:

1. $500,000⁰⁰ (Five Hundred Thousand dollars) each jointly and/or separatelly against defendants Holly Anderson, T. Jones, K. Straub, John Doe, Mr. Moulton, Fernando J. Messer, W. Wood, Ms. Woods, K. Bryant, West, D. Gardner, Dr. Williard, Hardin and M. Raitt, for their violation of petitioner's First Amendment Rights to Freedom of Speech and/or Petition the Government for Redress TOTALLING $7,000,000⁰⁰ (Seven Million dollars).

2. $500,000⁰⁰ (Five Hundred Thousand dollars) each jointly and/or separatelly against

defendants Holly Anderson, T. Jones, K. Straub, John Doe, Mr. Moulton, Fernando J. Messer, W. Wood, Ms. Woods, K. Bryant, West, D. Gardner, Dr. Williard, Hardin and M. Raitt, for their violation of petitioner's Fifth and/or Fourteenth Amendment Rights to Due Process TOTALLING $7,000,000⁰⁰ (Seven Million dollars).

3. $500,000 (Five Hundred Thousand dollars) each jointly and/or separately against defendants Holly Anderson, T. Jones, K. Straub, John Doe, Mr. Moulton, Fernando J. Messer, W. Wood, Ms. Woods, K. Bryant, West, D. Gardner, Dr. Williard, Hardin and M. Raitt, for their violation of petitioner's Eighth Amendment Right to not be subjected to Cruel & Unusual Punishment TOTALLING $7,000,000⁰⁰ (Seven Million dollars).

C. Award PUNITIVE Damages in the following amount:

1. $1,000,000⁰⁰ (One Million dollars) each jointly and/or separately against defendants Holly Anderson, T. Jones, K. Straub, John Doe, Mr. Moulton, Fernando J. Messer, W. Wood, Ms. Woods, K. Bryant, West, D. Gardner, Dr. Williard, Hardin and M. Raitt TOTALLING $14,000,000⁰⁰ (Fourteen Million dollars).

D. GRANT petitioner a JURY TRIAL on all Triable Issues.

E. The REIMBURSEMENT of petitioner's cost & fees in this case.

F. APPOINTMENT of COUNSEL to REPRESENT this case.

G. Any additional Relief this Court deems just, proper & equitable.

By the signature of Petitioner Darrell Parks', signed below, he submits the aforegoing COMPLAINT under penalty of perjury that the above stated is true & correct.


## CERTIFICATE OF SERVICE

I, Petitioner Darrell Parks, #09540-007 hereby certify that I mailed this COMPLAINT to the Clerk's Office at: UNITED STATES DISTRICT COURT FOR THE EASTEAN DISTRICT OF KENTUCKY, 310 South

Main Street, Post Office Box 5121, London, Kentucky 40745-5121, for purpose of litigation, on this _____ day of _____ month 2010, which is deemed filed at the time it was delivered to prison authorities for forwarding to the Court, see Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the Court to litigate, by placing same in a seal, postage prepaid envelope and deposited same in the United States Postal Mail at Victorville-USP.

Respectfully Submitted,
Mr. Darrell Parks

DATE:

## VERIFICATION

I have read the foregoing COMPLAINT and hereby verify that the matters

alleged and averred to herein are true, except as to matters alleged on information

and belief and as under penalty of perjury that the foregoing is true and correct.

Executed at Victorville-USP in Adelanto, California on this _____ day

of _____ month 2010.

Submitted Respectfully
Mr. Darrell Parks

-21-